b

# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF LOUISIANA
# ALEXANDRIA DIVISION

| | |
|---|---|
| RUSSELL G. WARE | CIVIL ACTION NO. 1:18-CV-00417 |
| VERSUS | JUDGE DRELL |
| DARREL VANNOY | MAGISTRATE JUDGE PEREZ-MONTES |

## REPORT AND RECOMMENDATION

Petitioner Russell G. Ware ("Ware") filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Docs. 1, 10, 11). Because Ware has not carried his burden of proving he is entitled to habeas relief, his petition should be DENIED AND DISMISSED WITH PREJUDICE.

## I.    Background

Ware filed a § 2254 petition contesting his 2009 convictions for aggravated rape and sexual battery by a judge in the Ninth Judicial District Court in Rapides Parish. Ware was sentenced to a total of life plus 25 years of imprisonment. Ware's convictions and sentences were affirmed on appeal. See State v. Ware, 2011-337 (La. App. 3d Cir. 11/23/11), 80 So. 3d 593, writs den., 2011-1391 (La. 3/9/12), 84 So. 3d 549, and 2012-0046 (La. 8/22/12), 97 So.3d 358.

The facts of this case, as set forth by the Louisiana Court of Appeal for the Third Circuit in Ware, 80 So. 3d at 595-96, are as follows:

> In December 2007, Defendant, Russell Gene Ware, Jr., allegedly engaged in sexual intercourse with his live-in girlfriend's daughter, M.H., who was eleven years old at the time. On that morning, after her mother had gone to work, Defendant took the victim from her bedroom and put her into the bed he shared with her mother. He undressed her

and inserted his penis into her vagina. In February 2008, while her mother was at work, after the minor child had taken a bath, Defendant entered the bathroom and, despite her protests, insisted on applying medication to sores she had on her buttocks. He then rubbed M.H.'s anus and vagina. The following weekend, M.H. told her father about the touching in the bathroom. He reported the incident to the police. The victim's father arranged for her to immediately see a counselor about the incident. At this time, the victim told the counselor about the incident in December. Again, the victim's father contacted the police department.

Ware raises the following grounds for habeas relief (Docs. 1, 10, 11):

1. There was insufficient evidence to support Ware's conviction for aggravated rape and sexual battery.  The only evidence was the testimony of the victim, M.H., and the altered testimony of Defendant's previous victim, L.L., from a 16-year-old conviction for indecent behavior with a juvenile.

2. The trial court erred in allowing the State to introduce evidence from a 16-year-old prior conviction on an unrelated charge.

3. There was prosecutorial misconduct because the prosecutor "coached" M.H., deliberately misrepresented the truth, and knowingly and intentionally presented perjured testimony.

4. Ware's attorney refused to allow him to testify at trial, in violation of his Sixth Amendment right to the effective assistance of counsel.

5. Ware was tried by a biased judge and denied his rights to counsel and a fair trial because the trial judge: (1) forced Ware to choose between his right to counsel and his right to trial by jury; (2) deprived Ware of the effective assistance of counsel by refusing to continue the trial more than one day; (3) rejected the testimony of the state's expert witness; and (4) made an improper comment regarding pedophiles during closing arguments.

6. Ware had ineffective assistance of counsel because his attorney: (1) failed to conduct pre-trial discovery; (2) failed to investigate, interview and call witnesses; (3) allowed improper other crimes evidence to be presented unchallenged; (4) failed to present a defense; (5) failed to call an expert witness in the area of child sexual abuse to challenge the State's expert witness and evidence; and (6) failed to confront and cross-examine the State's witnesses.

7. The trial court erred in denying defense counsel's motion for a continuance to allow defense counsel to adequately prepare for trial.

Respondent filed a response to Ware's petition (Doc. 15), to which Ware replied (Doc. 26).

## II.   Law and Analysis

### A.   Rule 8(a) Resolution

The Court is able to resolve this petition without the necessity of an evidentiary hearing because there is no genuine issue of material fact relevant to the petitioner's claims, and the state court records provide the required and adequate factual basis. See Moya v. Estelle, 696 F.2d 329, 332-33 (5th Cir. 1983); Easter v. Estelle, 609 F.2d 756, 761 (5th Cir. 1980); Habeas Corpus Rule 8(a).

### B.   Standard of Review

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court shall be considered only on the ground that he is in custody in violation of the Constitution, laws, or treaties of the United States. 28 U.S.C. § 2254(a).  The role of a federal habeas court is to guard against extreme malfunctions in the state criminal justice systems, not to apply *de novo* review of factual findings and to substitute its own opinions for the determination made on the scene by the trial judge.  See Davis v. Ayala, 135 S. Ct. 2187, 2202 (U.S. 2015) (citing Harrington v. Richter, 562 U.S. 86, 102–03 (2011).

Under 28 U.S.C. § 2254 and AEDPA, which is applicable to habeas petitions filed after its effective date on April 24, 1996, habeas relief is not available to a state

prisoner with respect to a claim that was adjudicated on the merits in the State court proceedings unless the adjudication of the claim (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. See Martin v. Cain, 246 F.3d 471, 475-76 (5th Cir. 2001), cert. den., 534 U.S. 885 (2001). Therefore, Section 2254(d) demands an initial inquiry into whether a prisoner's "claim" has been "adjudicated on the merits" in state court; if it has, AEDPA's highly deferential standards kick in. See Davis, 135 S. Ct. at 2198 (citing Richter, 562 U.S. at 103).

When state courts have adjudicated the petitioner's claims on the merits, the Court's review is subject to AEDPA's so-called "relitigation bar." See Thomas v. Vannoy, 898 F.3d 561, 566 (5th Cir.2018), cert. denied, 139 S.Ct. 1321 (2019) (citing 28 U.S.C. § 2254(d)(1)). Because that relitigation bar applies, the Court may not grant habeas relief unless "the [state court's] adjudication of the claim resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." See id.

Pursuant to AEDPA, pure questions of law and mixed questions of law and fact are reviewed under § 2254(d)(1), and questions of fact are reviewed under § 2254(d)(2). See Martin, 246 F.3d at 475-76.

C.    <u>Ware's convictions are supported by sufficient evidence.</u>

Ware contends there is insufficient evidence to support his convictions for aggravated rape and sexual battery since the only evidence was the testimony of the victim, M.H., and the altered testimony of Defendant's previous victim, L.L., from a 16-year-old conviction for indecent behavior with a juvenile.

A reviewing court confronted with a claim of insufficient evidence must, after viewing all the evidence in the light most favorable to the conviction (prosecution), determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  <u>See</u> <u>Cupit v. Whitley</u>, 28 F.2d 532, 542 (5th Cir. 1994), cert. den., 513 U.S. 1163 (1995) (citing <u>Jackson v. Virginia</u>, 443 U.S. 307 (1979)).

Habeas relief on a claim of insufficient evidence is appropriate only if it is found that, upon the record evidence adduced at trial, no rational trier of fact could have found proof of guilt beyond a reasonable doubt.  <u>See</u> <u>West v. Johnson</u>, 92 F.3d 1385 (5th Cir. 1996), cert. den., 520 U.S. 1242 (1997) (citing <u>Jackson</u>, 443 U.S. at 322-26).  To apply this standard, courts look to elements of the offense as defined by state substantive law.  <u>See</u> <u>Donahue v. Cain</u>, 231 F.3d 1000, 1004 (5th Cir. 2001).

In order to prove a defendant was guilty of aggravated rape of a child less than thirteen under La. R.S. 14:42(A)(4), the State must have proven beyond a reasonable doubt that: (1) the defendant engaged in anal, oral, or vaginal intercourse deemed to be without consent of the victim because of (2) the victim's age at the time of the rape.

See <u>State v. Ricks</u>, 49,609 (La. App. 2 Cir. 1/14/15), 194 So.3d 614, 624 (citing <u>State v. Prejean</u>, 2007–1269 (La. App. 3 Cir. 4/30/08), 981 So.2d 272, vac'd in other part, 2008-1192 (La. 2/6/09), 999 So. 2d 1135).  Force is not an element of rape of a child under the age of 12.  See <u>Ricks</u>, 194 So.3d at 624 (citing <u>State v. Taylor</u>, 36,066 (La. App. 2 Cir. 6/12/02), 821 So.2d 633, writ den., 2002–2068 (La. 6/20/03), 847 So.2d 1222).

La. R.S. 14:43.1(A)(2) defines sexual battery of a juvenile as: "[T]he intentional touching of the anus or genitals of the victim by the offender using any instrumentality or any part of the body of offender, directly or through clothing, or the touching of the anus or genitals of the offender by the victim using any instrumentality or any part of the body of the victim, directly or through clothing, when…(2) The victim has not yet attained fifteen years of age and is at least three years younger than the offender." See <u>also</u> <u>State v. Cavazos</u>, 2011-0733 (La. App. 4th Cir. 5/16/12), 94 So.3d 870, 878, writs den.,  2012-1372 and 2012-1438 (La. 10/26/12), 99 So.3d 645.

"The testimony of the victim alone is sufficient to establish the elements of the offense of aggravated rape, even where the State does not introduce medical, scientific, or physical evidence to prove the commission of the offense by the defendant."  <u>State v. Wallace</u>, 2013-0149 (La. App. 4 Cir. 6/25/14), 143 So.3d 1275, 1279 (citing <u>State v. Lewis</u>, 97–2854, p. 33 (La. App. 4 Cir. 5/19/99), 736 So.2d 1004, 1023, writ den., 1999-2694 (La. 3/17/00), 756 So.2d 325); <u>see also</u> <u>Broadway v. Office of District Attorney</u>, 676 Fed. Appx. 346, 347 (5th Cir. 2017), cert. den., 137 S. Ct.

2197 (U.S. 2017) ("[I]n the absence of scientific evidence, testimony alone is sufficient to establish penetration.") (citing <u>State v. Rives</u>, 407 So.2d 1195, 1197 (La. 1981); <u>Wilson v. Cain</u>, 2014 WL 3700962, *14 (E.D. La. 2014).

In this case, the victim testified as to the elements of the offense, and the witness testified as to Ware's past sexually assaultive behavior with children under 17 years old pursuant to La. C. E. art. 412.2. That testimony was sufficient evidence to support Ware's convictions.

Moreover, where there has been a thoughtful review of the sufficiency of the evidence by a state appellate court, that court's findings are entitled to great weight. <u>See</u> <u>Jackson</u>, 443 U.S. at 322 n.15. The Court of Appeal considered the weight of the victim's testimony and found the State established the elements of aggravated rape beyond a reasonable doubt. <u>See</u> <u>Ware</u>, 80 So.3d at 598. It is apparent, and significant, that the court plainly credited the victim's testimony.

Therefore, there is no merit to Ware's contention that the victim's and witness's testimony was insufficient evidence to support his convictions.

**D.    <u>Evidence of Ware's prior conviction and the underlying facts were admissible to show Ware's "lustful disposition toward children."</u>**

Ware contends he was prejudiced when the trial court erred in allowing the State to introduce evidence from a 16-year-old prior conviction on an unrelated charge.

The State introduced into evidence Ware's 1994 conviction for indecent behavior with a juvenile, L.L.  The State filed a <u>Prieur</u>[1] motion notifying Ware of its intent to introduce evidence of another criminal act.  At the hearing, L.L. testified regarding the sexual acts committed against her by Ware when she was between the ages of three and five years old.  The trial court granted the State's <u>Prieur</u> motion.

The admission of improper evidence in a state criminal trial will constitute grounds for habeas relief only if fundamental fairness was prevented thereby.  <u>See Shaw v. Estelle</u>, 686 F. 2d 273, 275 (5th Cir. 1982), cert. den., 459 U.S. 1215 (1983). What elevates the mistake to a constitutional plane is at least two-fold.  <u>See Shaw</u>, 686 F. 2d at 275.  First, the mistake must be material in the sense of a crucial factor; and second, the State must have been complicit.  <u>See Shaw</u>, 686 F. 2d at 275.

Pursuant to La. C.E. art. 412.2(A),[2] evidence of a prior sexual offense to show a defendant has a "lustful disposition toward children" is admissible if it is relevant, and if the probative value of the evidence outweighs its prejudicial effect.  <u>See Cavazos</u>, 94 So.3d at 880.

---

[1] <u>State v. Prieur</u>, 277 So.2d 126 (La. App. 3d Cir. 1973), abrogated in part by <u>State v. Taylor</u>, 2016-1124 (La. 12/1/16), 217 So.3d 283, 291-292 (holding the State need only show by "sufficient evidence" that a defendant committed the other crime, wrong, or act).  <u>Prieur</u> requires that, before evidence of another crime, wrong, or act is introduced, the trial court must determine, on the basis of the showing requisite for it to do so at the hearing outside the presence of the jury, that the extraneous acts are probative of a real issue and that their probative value exceeds their prejudicial effect.  <u>See Taylor</u>, 217 So.3d at 291.

[2] La. C.E. art. 412.2(A) states: "When an accused is charged with a crime involving sexually assaultive behavior, or with acts that constitute a sex offense involving a victim who was under the age of seventeen at the time of the offense, evidence of the accused's commission of another crime, wrong, or act involving sexually assaultive behavior or acts which indicate a lustful disposition toward children may be admissible and may be considered for its bearing on any matter to which it is relevant subject to the balancing test provided in Article 403."

Pursuant to Article 412.2, the State presented testimony from L.L. as evidence of Ware's "lustful disposition toward children."  L.L.'s testimony fell squarely within the ambit of Article 412.2.  Ware argues his prior acts and conviction were too old to be relevant.  However, there is simply no time limit on the prior acts that may be introduced under Article 412.2.  See State v. Johnson, 43,843 (La. App. 2d Cir. 1/28/09), 2 So. 3d 606, 615, writ den., 2009-0464 (La. 11/6/09), 21 So. 3d 300; see also State v. Dale, 50,195 (La. App. 2d Cir. 11/18/15), 180 So.3d 528, 536-37, writ den., 2015-2291 (La. 4/4/16), 190 So. 3d 1203.

Therefore, L.L.'s testimony as to Ware's past acts was properly admitted and did not render Ware's trial fundamentally unfair.  Compare Cavazos, 94 So.3d at 880.

E.    The prosecutor did not engage in misconduct.

Next, Ware alleges the prosecutor "coached" M.H. and L.L., invented testimony to fit the crimes charged, and knowingly and intentionally presented perjured testimony.

1.

Ware contends M.H. changed her statement and testimony four times.  Ware contends: (1) in her initial statement, M.H. made no mention of aggravated rape but instead described acts that did not constitute a rape; (2) her second statement was a vague allegation of molestation while asleep; (3) her third statement alleged rape during a loud, physical struggle; and (4) the prosecutor visited M.H. while she was sequestered and, when M.H. returned to testify, her story had changed to "perfectly fit the elements of the crime charged" by alleging a "slight penetration."

9

When alleged in habeas corpus proceedings, a claim of prosecutorial misconduct is reviewed to determine whether it "so infected the [trial] with unfairness as to make the resulting [conviction] a denial of due process." See Barrientes v. Johnson, 221 F.3d 741, 753 (5th Cir. 2000) (quoting Ables v. Scott, 73 F.3d 591, 592 n. 2 (5th Cir. 1996), cert. den., 517 U.S. 1198 (1996)).

It has long been established that a prosecutor's knowing use of false testimony violates due process. See Giglio v. United States, 405 U.S. 150, 154 (1972) (citing Mooney v. Holohan, 294 U.S. 103, 112 (1935)). A prosecutor has a duty to correct false or misleading testimony when it comes to his attention. See Napue v. Illinois, 360 U.S. 264, 269 (1959). It is petitioner's burden, however, to prove: (1) the testimony was actually false; (2) the prosecution knew it was false; and (3) the testimony was material. See Canales v. Stephens, 765 F. 3d 551, 573 (5th Cir. 2014). The testimony is material if there is any reasonable likelihood that the false testimony could have affected the judgment of the fact-finder. See Canales, 765 F. 3d at 573 (citing United States v. Agurs, 427 U.S. 97, 103 (1976)).

Ware's claim of prosecutorial misconduct is based on a conclusory allegation that the prosecutor "coached" the state's witness, M.H., until her testimony fit the elements of the offenses charged. A prosecutor's action in "meeting with a witness before trial, by itself, suggests no impropriety." United States v. Nambo–Barajas, 338 F. 3d 956, 963 (8th Cir. 2003); see also Schwertz v. Cain, 2012 WL 5956308, *15 (E.D. La. 2012), report and recommendation adopted, 2012 WL 5945916 (E.D. La. 2012) (citing Nambo-Barajas, 338 F. 3d at 963). Prosecutors are entitled to prepare

10

their witnesses for trial.  See United States v. Rivera–Hernandez, 497 F. 3d 71, 80 (1st Cir. 2007); see also Banks v. Thaler, 583 F. 3d 295, 322 (5th Cir. 2009), cert. den.,559 U.S. 1068 (2010); Schwertz, 2012 WL 5956308 at *15.

Ware also contends it was misconduct for the prosecutor to visit M.H. while she was sequestered.  But again, the prosecutor was entitled to meet with his witness during the trial.[3]

Ware has not presented any evidence to show that M.H. testified untruthfully. Ware's allegations indicate that M.H.'s statements became more detailed over time, as she discussed the events with others and became better able to explain what occurred.  Defense counsel questioned M.H. extensively about the contents of her prior statements.  (Doc. 15-8, pp. 54-56).[4]  M.H. testified that her testimony on direct examination provided more detail than her previous written statement for the Woodworth Police (Doc. 15-8, p. 54).  Ware also explained the additional detail in her testimony over her previous statement to the social worker.  (Doc. 15-9, pp. 3-10). The addition of details in M.H.'s testimony that meet the elements of the charged

---

[3] The purpose of sequestering witnesses is to prevent their being influenced by testimony of prior witnesses and to strengthen the role of cross-examination in developing the facts.  See State v. Griffin, 329 So.2d 693, 695 (La. 1976); see also Perry v. Leeke, 488 U.S. 272, 281–82 (1989) ("[W]itnesses may be sequestered to lessen the danger that their testimony will be influenced by hearing what other witnesses have to say, and to increase the likelihood that they will confine themselves to truthful statements based on their own recollections.").  The prosecutor visiting his witness while she was sequestered did not violate the rule of sequestration.

[4] M.H.'s prior statements were mentioned and discussed at trial but were not introduced into evidence.  (Doc. 15-6, p. 21; Doc. 15-8, pp. 52-54).  M.H.'s prior statement to the social worker and her prior statement to Officer Preble were attached to Ware's appeal.  (Doc. 15-16, pp. 11-28; Doc. 15-17, pp. 25-42).

11

offenses is not necessarily indicative of untruthfulness or improper coaching. Ware has not met his burden of proving M.H.'s testimony was false, or that the prosecutor committed misconduct.

## 2.

Ware also argues that L.L.'s testimony was nothing like her testimony (or statement) in the original case. (Doc. 15-17). Ware contends he was convicted of indecent behavior with L.L., a juvenile, when she was 3 to 5 years old. Ware argues, however, that L.L. testified Ware had actually committed aggravated rape.

The State filed a <u>Prieur</u> Notice that stated Ware was arrested for oral sexual battery and molestation of a juvenile, and pleaded guilty to the amended charge of indecent behavior with a juvenile (Doc. 15-3, p. 31). The <u>Prieur</u> Notice further stated that Ware's conviction resulted from an incident wherein he actually had sexual intercourse with a minor. L.L. testified, at the <u>Prieur</u> hearing[5] and at trial, that Ware sexually molested and raped her when she was 3 to 5 years old (Doc. 15-7, pp. 47-48). L.L.'s testimony as to Ware's prior acts did not have to "match" the charge to which Ware pleaded guilty pursuant to an agreement with the State.

Since Ware has not carried his burden of proving any of the testimony from M.H. and L.L. was false, he has also not proven the prosecutor engaged in misconduct which rendered his trial fundamentally unfair.

---

[5] After the hearing, the trial court held L.L.'s testimony as to Ware's prior acts was relevant. (Doc. 15-3, p. 36).

**F.**    <u>**Ware was not denied his right to testify in his own defense.**</u>

Ware contends his attorney refused to allow him to testify in his own defense, and that the trial court erred in holding that defense counsel's conduct was permissible trial strategy.

A defendant in a criminal case has the right to take the witness stand and to testify in his or her own defense.  <u>See</u> <u>Rock v. Arkansas</u>, 483 U.S. 44, 49 (1987).  It is one of the rights that "are essential to due process of law in a fair adversary process."  <u>See</u> <u>Rock</u>, 483 U.S. at 51 (citing <u>Faretta v. California</u>, 422 U.S. 806, 819, n. 15 (1975)).  The right to testify in one's own defense is protected by the Fifth Amendment's privilege against self-incrimination, the Sixth Amendment's compulsory process clause, and the Fourteenth Amendment's due process clause.  <u>See</u> <u>Rock</u>, 483 U.S. at 51-53; <u>see also</u> <u>State v. Hampton</u>, 818 So.2d 720, 723-24 (La. 2002).

A criminal defendant's right to testify is fundamental and personal to the defendant.  <u>See</u> <u>Hampton</u>, 818 So.2d at 723 (citing <u>Wainwright v. Sykes</u>, 433 U.S. 72, 93 n.1 (1977)).    It can only be waived by the defendant, not his attorney.  <u>See</u> <u>Hampton</u>, 818 So.2d at 725.

When a defendant contends that trial counsel interfered with his right to testify, "the appropriate vehicle for such claims is a claim of ineffective assistance of counsel."  <u>United States v. Mullins</u>, 315 F.3d 449, 452 (5th Cir. 2002), cert. den., 541 U.S. 1031 (2004) (citing <u>Sayre v. Anderson</u>, 238 F.3d 631, 634 (5th Cir. 2001)).

To establish that his legal representation at trial fell short of the assistance guaranteed by the Sixth Amendment, a convicted defendant must meet the two-

pronged test set forth by the Supreme Court in Strickland v. Washington, 466 U.S. 668 (1984). The defendant must show that his counsel's performance was both deficient (that counsel did not provide reasonably effective assistance under prevailing professional norms) and prejudicial (that errors by counsel "actually had an adverse effect on the defense"). See Anderson v. Collins, 18 F.3d 1208, 1215 (5th Cir. 1994) (citing Strickland, 466 U.S. at 686-89, 693). The former component of the test authorizes only "highly deferential" judicial scrutiny, requiring the defendant to overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. See Anderson, 18 F.3d at 1215 (citing Strickland, 466 U.S. at 689). As to the latter component, it is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding. Rather, the defendant must demonstrate a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. See Anderson, 18 F.3d at 1215 (citing Strickland, 466 U.S. at 693).

A court considering a claim of ineffective assistance must apply a strong presumption that counsel's representation was within the wide range of reasonable professional assistance. See Harrington v. Richter, 562 U.S. 86, 104 (2011) (citing Strickland, 466 U.S. at 689). The challenger's burden is to show that counsel made errors so serious that counsel was not functioning as the counsel guaranteed by the Sixth Amendment. See Richter, 562 U.S. at 104 (citing Strickland, 466 U.S. at 687).

The decision whether to put a defendant on the stand is a judgment call which should not easily be condemned with the benefit of hindsight. See Mullins, 315 F.3d

14

at 453.  Ware's trial concluded without him offering any testimony, and Ware did not tell the judge that he wanted to testify (Doc. 15-9, p. 14).  There was no objection, statement, or argument by Ware concerning his desire to testify, and there was no discussion between Ware and his attorney at that point in the trial.  When Ware's attorney rested his case, Ware did nothing.

Ware raised this claim on post-conviction relief ("PCR").  When the Louisiana Third Circuit Court of Appeal ordered the district court to rule on Ware's application for PCR (Doc. 15-27, p. 34), a hearing was held on the issue before a different district judge than the one who presided over Ware's trial  (Doc. 15-31, p. 12).  The district court found attorney Malone's testimony established that Malone believed it would be detrimental to Ware's case if he were to testify during trial, and that Ware agreed not to testify.  (Doc. 15-29, p. 8).  The court further noted that Ware's testimony at the hearing did not accurately reflect what occurred at trial, as shown in the trial transcript.[6]  (Doc. 15-29, p. 8).  The Court of Appeal and the Supreme Court affirmed that decision.  (Doc. 1-3, pp. 32, 38).

Although Ware argues now that his attorney did not have the right to make that decision for him, he does not allege that he did not agree to take his attorney's advice concerning waiving his right to testify.  Ware's acquiescent conduct at trial supports the state court's finding that Ware agreed not to testify.  However, Ware

---

[6] There is no transcript of the post-trial evidentiary hearing on this issue.  It appears it was not transcribed for the state courts.

now essentially argues that, in retrospect, he does not think waiving his right to testify gave him a tactical advantage.

Ware has not shown that his attorney (Malone) did not provide reasonably effective assistance under prevailing professional norms when he advised him to waive his right to testify. Moreover, Ware has not alleged what he would have said in testimony that would have changed the outcome of his trial.

Therefore, Ware has not shown that, because he had ineffective assistance of counsel, he was denied his right to testify at trial.

G.    **Ware did not carry his burden of proving the trial judge was biased, and he was not denied his right to a jury, right to counsel, and right to a fair trial.**

Ware contends the trial judge denied his right to a jury trial, right to counsel, and right to a fair trial. Ware alleges his attorney filed a motion to enroll as counsel on September 9, 2009. The trial judge initially denied the motion, but granted the motion one day before trial (on September 14, 2009) with the proviso that Ware agreed to be tried by a bench trial and give up his right to a jury. Ware also contends the trial judge denied him a fair trial when he granted his newly enrolled attorney's motion for a continuance to prepare for trial but only gave him one day.

1.

Ware's appointed counsel, Brown, testified that Malone contacted Brown two weeks before trial and said he would be representing Ware if Ware paid him. (Doc. 15-14, p. 26). The prosecutor testified that Brown contacted her the same day and told her about it. (Doc. 15-14, p. 26). A few days later, Malone visited the prosecutor

about another case, and told her he had not yet enrolled in Ware's case because he had not yet been paid. (Doc. 15-14, p. 27).

Malone filed a motion to enroll on September 9, 2009. (Doc. 15-3, p. 41). On the first motion for continuance (filed by Brown in order to get the transcript of the Prieur hearing), trial was set for September 14, 2009. (Doc. 15-3, p. 2).

On September 14, 2009, defense counsel Brown moved for a continuance, and the trial was continued until the next day, September 15, 2009. (Doc. 15-3, p. 3). The trial court stated that Ware's attorney's motion to enroll had not been signed because the trial was to start the next day and Malone would want a continuance. (Doc. 15-14, p. 6). The State objected to a continuance because its witnesses had already been scheduled and prepared. (Doc. 15-14, p. 9). Malone advised the court that he could not be ready for trial the next day. (Doc. 15-14, p. 10). The court stated it would grant Malone's Motion to Enroll but not the motion to continue the trial (Doc. 15-14, p. 10). The court and the prosecutor discussed the fact that Ware had indicated his intent to hire an attorney in February and May 2009, and that he had not done so until July, just before trial. (Doc. 15-14, pp. 10-11).

The court then stated it would deny the Motion to Enroll, and asked Ware's appointed attorney (Brown) if she was prepared for trial the next day (Doc. 15-14, p. 12). Brown stated that, since Ware had been able to retain counsel, he was no longer considered indigent and did not qualify for indigent representation. (Doc. 15-14, pp. 12-14). When the trial court told Brown she would not be released as Ware's appointed counsel, Brown asked for a continuance because she had just received a

17

copy of the <u>Prieur</u> hearing transcript less than a week ago. (Doc. 15-14, pp. 15, 43). The trial court denied that motion to continue on the ground that appointed counsel had represented Ware at the <u>Prieur</u> hearing and had already questioned L.L. in court. (Doc. 15-14, p. 16). The case was then recessed for a review of Ware's indigent status. (Doc. 15-14, p. 37).

Later the same day (September 14), Ware moved (through attorney Brown) to waive his right to a jury trial. (Doc. 15-14, p. 37). Brown stated she had spoken to Ware about the matter for several days, and he wanted a bench trial. (Doc. 15-14, p. 37). Brown further stated she did not believe Ware could get a fair jury trial if L.L. testified as to Ware's prior acts. (Doc. 15-14, p. 42). The court questioned Ware extensively, and found he was freely and voluntarily waiving his right to a jury trial. (Doc. 15-14, p. 41).

Attorney Brown again moved for a continuance or a stay. (Doc. 15-3, p. 3; Doc. 15-14, pp. 41-44). Attorney Malone then returned to the courtroom and was advised Ware had waived his right to a jury. (Doc. 15-3, p. 3). The issue of Ware's non-indigence was re-argued, and Malone's motion to enroll was then granted. (Doc. 15-3, p. 3; Doc. 15-14, pp. 19-46). The motion for a continuance was granted and the trial was continued for one day, to September 16, 2009, because Ware's case had been pending for almost a year, and it was important for the victim "to get this case disposed of as quickly as possible, so she can get on with her life." (Doc. 15-14, pp. 45-47). The court also explained problems with its trial calendar (and scheduling

problems in other upcoming trials) as a reason to not continue the trial longer. (Doc. 15-14, p. 45).

Malone agreed to begin trial on September 16, so his motion to enroll was granted and Brown was allowed to withdraw. (Doc. 15-3, p. 3; Doc. 15-14, pp. 46-47).

On the first day of trial, September 16, 2009, Malone moved for a continuance, which was denied, and moved for reconsideration of the ruling on the Prieur motion, which was also denied. (Doc. 15-3, p. 4).

## 2.

Under the Due Process Clause, a criminal defendant is guaranteed the right to a fair and impartial tribunal. See Richardson v. Quarterman, 537 F.3d 466, 474 (5th Cir. 2008), cert. den., 555 U.S. 1173 (2009) (citing Bracy v. Gramley, 520 U.S. 899 (1997)). The Due Process Clause "establishes a constitutional floor, not a uniform standard." See id. This floor requires a fair trial, "before a judge with no actual bias against the defendant or interest in the outcome of his particular case." See id.

"[B]ias by an adjudicator is not lightly established." See Richardson, 537 F.3d at 474 (citing Valley v. Rapides Parish Sch. Bd., 118 F.3d 1047, 1052 (5th Cir. 1997)). General allegations of bias or prejudice are insufficient to establish a constitutional violation. See Richardson, 537 F.3d at 474 (citing Aetna Life Ins. Co. v. Lavoie, 475 U.S. 813 (1986)). Bias is a difficult claim to sustain under AEDPA because the Supreme Court's case law on bias has "acknowledge[d] that what degree or kind of interest is sufficient to disqualify a judge from sitting 'cannot be defined with

precision.'" Buntion v. Quarterman, 524 F.3d 664, 672 (5th Cir. 2008), cert. den., 555 U.S. 1176 (2009) (citing Aetna Life Ins. Co., 475 U.S. at 822).

A judge may either be actually biased or presumptively biased. See Richardson, 537 F.3d at 474.[7] In cases where the defendant is alleging actual bias, opinions formed based on the facts at trial are rarely a basis for recusal unless they show a deep-seated, extreme favoritism or antagonism. See Buntion, 524 F.3d at 673 (citing Liteky v. United States, 510 U.S. 540, 555 (1994)). Judges do not have to be naive; the evidence at trial may reveal the defendant to be a "thoroughly reprehensible person." See Buntion, 524 F.3d at 673 (citing Liteky, 510 U.S. at 551). However, judicial opinions will support an actual bias claim if they reveal favoritism or antagonism such that fair judgment is impossible. See Buntion, 524 F.3d at 673 (citing Liteky, 510 U.S. at 555).

The petitioner needs evidence that the trial judge "was actually biased in petitioner's own case." See Buntion, 524 F.3d at 673 (citing Bracy, 520 U.S. at 909). Only in the most extreme cases would disqualification on the basis of bias be constitutionally required. See Buntion, 524 F.3d at 673 (citing Aetna Life ins. Co., 475 U.S. at 820-21 (notwithstanding the justice's undisputed statements of disdain

---

[7] The Supreme Court has only found that a judge's failure to recuse constitutes presumptive bias in three situations: (1) when the judge "has a direct personal, substantial, and pecuniary interest in the outcome of the case," (2) when he "has been the target of personal abuse or criticism from the party before him," and (3) when he "has the dual role of investigating and adjudicating disputes and complaints." Richardson, 537 F.3d at 475 (citing Buntion, 524 F.3d at 672).

for insurance companies, such generalized bias was insufficient to establish a constitutional violation).

There may be grounds for a bias challenge if "judicial remarks during the course of a trial . . . reveal such a high degree of favoritism or antagonism as to make fair judgment impossible." Buntion, 524 F.3d at 673-74 (citing Liteky, 510 U.S. at 555).

Ware alleges the trial judge commented during defense counsel's closing argument regarding the relationship between Ware and M.H.: "It's called grooming. That's what pedophiles do – they groom their victims." (Doc. 15-9, p. 31). Ware contends that comment indicated the judge's preconceived bias toward Ware.

The judge's comment exhibited his perception of pedophiles in general and of the relationship between Ware and M.H in particular. The comment was made after the close of the evidence and did not otherwise indicate a preconceived bias against Ware. In fact, taken in context, it is unclear that the comment implied the judge's conclusion that Ware was "grooming" M.H., rather than the judge's view of pedophilia. Moreover, the trial judge's rulings against Ware on the issues discussed below were proper, and do not indicate that the judge was biased against Ware.

Thus, Ware has not carried his heavy burden of proving the trial judge was biased.

### 3.

Ware contends the trial judge denied him his rights to a jury, the effective assistance of counsel, and a fair trial.

21

The right of jury trial in criminal cases is fundamental to our system of justice. State v. Muller, 351 So.2d 143, 146 (La. 1977) (citing Duncan v. Louisiana, 391 U.S. 145, 194 (1968)). The Fourteenth Amendment guarantees a right of jury trial in all criminal cases. Duncan, 391 U.S. at 149.

Ware contends the court would not permit Malone to enroll as his attorney (retained) unless Ware agreed to forego his right to a jury and proceed with a bench trial instead. That claim is not supported by the record. The hearing transcript shows Ware's appointed counsel, Brown, stated Malone wanted a bench trial because L.L. would be testifying about Ware's prior acts. Therefore, Ware has not carried his burden of proving he was denied his right to a jury trial.

Ware also contends he was denied a fair trial when the court only granted him a one-day continuance for Malone to prepare for trial. A habeas court does not "sit as a 'super' state supreme court" in a habeas proceeding to review errors under state law. Dickerson v. Guste, 932 F.2d 1142, 1145 (5th Cir. 1991), cert. den., 502 U.S. 875 (1991) (citing Martin v. Wainwright, 428 F.2d 356, 357 (5th Cir.), cert. denied, 400 U.S. 918 (1970)). However, Ware's claim that he was denied a continuance is actually a claim that the lack of a continuance denied him the effective assistance of counsel and a fair trial.

Ware had representation from the attorney of his choice. Ware has not shown that the denial of a continuance effectively denied him the right to the effective assistance of counsel or a fair trial. At the September 14 hearing, Malone agreed to proceed to trial on September 16. The trial record indicates Malone was prepared for

trial. Although Ware argues Malone did not have time to investigate the case, Malone had the benefit of the previous appointed counsel's investigations, motions, discovery, and handling of the <u>Prieur</u> hearing. The record indicates that Brown defended Ware vigorously, and Ware does not contend otherwise.

Because Ware has not pointed to any specific deficiencies in Malone's handling of the case that were caused by inadequate preparation,[8] he has not shown the court's refusal to continue the trial more than one day denied him his due process right to a fair trial.

Therefore, Malone has not carried his burden of proving he was denied a jury trial, a fair trial, or the effective assistance of counsel.

### H.    <u>Ware did not have ineffective assistance of trial counsel.</u>

Ware contends he had ineffective assistance of counsel because his (retained) attorney, Malone: (1) failed to perform proper pre-trial discovery; (2) failed to investigate, interview and call witnesses; (3) allowed improper other crimes evidence to be presented unchallenged; (4) failed to present a defense; (5) failed to call an expert witness in the area of child sexual abuse to challenge the State's expert witness and evidence; and (6) failed to confront and cross-examine the State's witnesses.

---

[8] Counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. <u>See</u> <u>Nelson v. Hargett</u>, 989 F.2d 847, 850 (5th Cir. 1993) (citing <u>Strickland</u>, 466 U.S. at 691). However, bare allegations do not suffice. A defendant who alleges a failure to investigate on the part of his counsel must allege with specificity what the investigation would have revealed and how it would have altered the outcome of the trial. <u>See</u> <u>Nelson</u>, 989 F.2d at 850 (citing <u>United States v. Green</u>, 882 F.2d 999, 1003 (5th Cir. 1989)).

Ware contends that, had Malone conducted proper pretrial discovery and investigation, he would have been able to impeach M.H. and L.L. with their prior inconsistent statements and change the outcome of the trial. Malone enrolled two days before trial began. All of Ware's pretrial discovery and investigation was conducted by his previous counsel, Brown. Ware has not alleged that Brown failed to conduct adequate discovery or investigation. Moreover, Ware thoroughly cross-examined M.H. concerning her prior statements. As to L.L., Ware has not provided a prior statement with which L.L. could have been impeached. Nor has Ware alleged that Brown was deficient in failing to obtain L.L.'s prior statement.

An applicant who alleges a failure to investigate on the part of his counsel must allege with specificity what the investigation would have revealed and how it would have altered the outcome of the trial. See United States v. Green, 882 F.2d 999, 1003 (5th Cir. 1989). To prevail on an ineffective assistance claim based on uncalled witnesses, an applicant must: (1) name the witness; (2) demonstrate that the witness would have testified; (3) set out the content of the witness's proposed testimony; and (4) show that the testimony would have been favorable. See Alexander v. McCotter, 775 F.2d 595, 602 (5th Cir. 1985). Hypothetical or theoretical testimony will not justify the issuance of a writ based on counsel's failure to call a witness. See Martin v. McCotter, 796 F.2d 813, 819 (5th Cir. 1986). Failure to produce an affidavit (or similar evidentiary support) from the uncalled witness is fatal to the claim of ineffective assistance. See Sayre, 238 F.3d at 636 (citing United States v. Cockrell, 720 F.2d 1423, 1427 (5th Cir. 1983), cert. Den., 467 U.S. 1251 (1984)).

Ware contends that, during trial, Malone erred in allowing improper other crimes evidence to be presented unchallenged. However, again, Ware's appointed counsel challenged introduction of that evidence, a <u>Prieur</u> hearing was held, the court ruled it was admissible, and counsel appealed that ruling. At the time of trial, the decision to allow the evidence had already been made. Ware does not allege that his appointed attorney, Brown, erred in those proceedings. There was nothing more for Malone to do at trial with regard to L.L.'s testimony except to cross-examine her, which he did. Ware has not alleged any specific step Malone failed to perform, or any specific error made by Malone with regard to his cross-examination of L.L.

Ware contends Malone erred in failing to call the investigating officer involved in L.L.'s case, Donna Duncan, to testify that the facts she discovered did not warrant a rape charge. (Doc. 1-2). However, Ware has not presented an affidavit from Donna Duncan to show she would have testified in his favor at this trial.

Ware further contends Malone erred in failing to employ an expert in child sexual abuse.[9] Ware contends, in conclusory fashion, that an expert would have "countered" the testimony of M.H. and L.L.; "challenged" the interviews of M.H. and the "methods" used during those interviews; and testified as to unspecified "studies" relevant to the physical examination and testing of child abuse victims. (Doc. 1-2). Again, Ware has not produced an affidavit or other evidence from such an expert to

_____

[9] The decision not to employ an expert in child sexual abuse was apparently made by the previous attorney, Brown.

show specifically what the expert would have said, and that it would have been testimony in Ware's favor.

Ware also contends Malone failed to present a defense and failed to confront and cross-examine the State's witnesses. Ware alleges vaguely that, had Malone properly cross-examined the State's witnesses, he would have impeached them. However, Malone presented defenses of lack of penetration, lack of medical evidence, and the lack of reliability/credibility of the witnesses' testimony. Malone cross-examined each witness thoroughly and attempted to impeach the victim (M.H.) with her prior statements. Ware does not allege specifically what questions his attorney failed to ask, and how they would have changed the result of his trial.

Ware also contends Malone was ineffective for failing to interview the State's expert, Dr. Maria Fontanez, who examined M.H. Dr. Fontanez testified that M.H. had a normal virginal vaginal introitus and a normal exam, but that did not mean she had not been sexually abused (Doc. 15-8, p. 21) because the degree of penetration makes a difference (Doc. 15-6, p. 29).

Defense counsel is not entitled to "interview" a state's expert witness prior to trial. The Louisiana Supreme Court has held that, even in extraordinary circumstances, witnesses should only be "made available" to the defense if the trial court, after conducting an *in camera* interview, finds they possess exculpatory information. See State v. Harper, 2010-0356 (La. 11/30/10, 10–11), 53 So.3d 1263, 1271 (citing State v. Golden, 95–0288 (La. 2/17/95), 650 So.2d 237, 238). Therefore, Ware's attorney could not have "interviewed" Dr. Fontanez before trial. In any event,

defense counsel should have been provided a copy of Dr. Fontanez's report before trial.[10]  Malone was able to prepare his cross-examination of Dr. Fontanez from her report.

As to this claim, Ware has not carried his burden of proving he had ineffective assistance of counsel.

## III.  Conclusion

Because Ware has not carried his burden of proving he is entitled to habeas relief, IT IS RECOMMENDED that Ware's § 2254 habeas petition (Docs. 1, 10, 11) be DENIED AND DISMISSED WITH PREJUDICE.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule 2(b), parties aggrieved by this recommendation have fourteen (14) days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen (14) days after being served with a copy of any objections or response to the District Judge at the time of filing.  No other briefs (such as supplemental objections, reply briefs etc.) may be filed. Providing a courtesy copy of the objection to the magistrate judge is neither required nor encouraged.  Timely objections will be considered by the district judge before he makes a final ruling.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame**

---

[10] After reviewing that report, attorney Brown apparently did not deem it necessary to request a hearing for a pretrial interview with Dr. Fontanez.

authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. See <u>Douglass v. United Services Automobile Association</u>, 79 F.3d 1415 (5th Cir. 1996).

Pursuant to Rule 11(a) of the Rules Governing Section 2254 cases in the United States District Courts, this Court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. Unless a Circuit Justice or District Judge issues a certificate of appealability, an appeal may not be taken to the court of appeals. **Within fourteen (14) days from service of this Report and Recommendation, the parties may file a memorandum setting forth arguments on whether a certificate of appealability should issue. See 28 U.S.C. § 2253(c)(2). A courtesy copy of the memorandum shall be provided to the District Judge at the time of filing.**

THUS DONE AND SIGNED in Alexandria, Louisiana on this __9th__ day of July, 2019.

_____
JOSEPH H. L. PEREZ-MONTES
UNITED STATES MAGISTRATE JUDGE